Steven W. Silver AK Bar # 7606089
Robertson, Monagle, and
Eastaugh, PC 1810 Samuel Morse
Drive
Suite 202
Reston VA 20191
(703) 527-4414 (office)
(703) 313-1793 (fax)
ssilver628@aol.com
AK Bar #7606089

James F. Clark, III  AK Bar # 6907025
Law Office of James F.
Clark 1109 C Street
Juneau, AK 99801
(907) 586-0122  (office)
(907) 586-1093 (fax)
jfclarkiii@gmail.
com
Attorneys for Proposed Defendant—Intervenors

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, THE WILDERNESS SOCIETY, WILDERNESS WATCH, CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, NATIONAL WILDLIFE REFUGE ASSOCIATION, ALASKA WILDERNESS LEAGUE and SIERRA CLUB<br><br>　　　　　　　　　　　　Plaintiffs,<br>　　v.<br>RYAN ZINKE, in his official capacity as Secretary of the U.S. Department of the INTERIOR, U.S. DEPARTMENT OF THE INTERIOR, AND U.S. FISH AND WILDLIFE SERVICE<br>　　　　　　　　　　　　Defendants, | Case No 3:18-cv 00029-TMB<br><br>**MOTION FOR LEAVE TO INTERVENE AS DEFENDANT-INTERVENORS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |

1

| | |
|---|---|
| KING COVE NATIVE CORPORATION, AGDAAGUX TRIBE, NATIVE VILLAGE OF BELKOFSKI, ALEUTIANS EAST BOROUGH, CITY OF KING COVE AND CITY OF COLD BAY | ) ) ) ) ) ) |
| Proposed Defendant-Intervenors | ) ) |

**MOTION FOR LEAVE TO INTERVENE AS DEFENDANT--INTERVENORS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

By and through its undersigned legal counsel, and pursuant to Fed. R. Civ. P. 24(a) and Rule 7 of this Court, six organizations, each with a vital interest in the King Cove Land Exchange Agreement, including: The King Cove Corporation (hereinafter KCC), the Aleutians East Borough (hereinafter AEB), the City of King Cove, the Agdaagux Tribe, The Native Village of Belkofski, and the City of Cold Bay (hereinafter collectively referred to as Movants), hereby move to intervene as Defendants in the above-captioned litigation. Movants seek intervention as of right under Rule 24(a) (2) or, alternatively, seek permissive intervention under Rule 24(b) (2).

A proposed Order, proposed Answer, and Corporate Disclosure Certificate accompany this motion as required by Fed. R. Civ. P. 24(c), LCvR 7(c) and (j), LCvR 7.1. Pursuant to LCvR 7(m), counsel for Movants has conferred with counsel for other parties to determine whether they will oppose this motion. Plaintiffs' counsel states that the Plaintiffs do not oppose this motion on condition that Movants avoid duplicating arguments made by Federal Defendants to the extent reasonably possible. The Federal Government's counsel states that it will provide its

2

position to the Court regarding the proposed intervention once it has reviewed Movants' moving papers.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Aleut people of the King Cove/Izembek Refuge region have been seeking a road between the City of King Cove and the City of Cold Bay for over 30 years. The City of King Cove is a predominantly Aleut Community consisting of approximately 938 persons, which is only 17 miles from the all-weather airport at Cold Bay, located near the end of the Alaska Peninsula. That airport was built by the U. S. Military during World War II. The airport is now owned and operated by the State of Alaska. The alternative to the road is travel by water over 14 miles of open ocean to a dock that requires climbing a ladder to reach the shore at Cold Bay. (Declaration of Henry Mack-Exhibit D at Paragraphs 2 and 3).

The ability to reach this airport is critical to the operation, health and safety of all residents of the Aleutians East Borough, particularly the cities of Cold Bay, King Cove, Nelson Lagoon, and False Pass. Each resident of these municipalities and the tribal members must access Anchorage and its medical facilities by and through the Cold Bay Airport. (Declaration of Henry Mack,- Exhibit D at Paragraph 3).

Congress designated the Izembek National Wildlife Refuge as a unit of the National Wilderness Preservation System as part of the Alaska National Interest Lands Conservation Act

of 1980. (P.L. 96-487, section 702(6)) That Congressional designation prohibited the construction of a road between the Cities of King Cove and the Cold Bay Airport.

Movants have sought a way to build that road ever since. The history of that effort has stretched over 20 years and manifested itself in at least three acts of Congress:

1. The King Cove Health and Safety Act , Section 353 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999 (P. L. 105-277);
2. The Izembek National Wildlife Refuge Exchange Act Section 6401 et. seq. of the Omnibus Public Lands Management Act (P.L. 111-11); and
3. The King Cove Land Exchange Agreement, signed between the Department of Interior and the King Cove Corporation dated Jan. 22, 2018. (Declaration of Henry Mack,-Exhibit D  Paragraph 4).

Each of these provisions has or had one goal: to provide safe, reliable, and affordable transportation for King Cove residents to travel from King Cove to the all-weather airport at Cold Bay. While the first two alternatives failed, the participation of each of the Movants (except the City of Cold Bay) demonstrated the specific interest of each. Each Movant's interest is different and separate from that of the other Movants. (Declaration of Henry Mack-Exhibit D at Paragraph 5;  Declaration of Dailey Schaack- Exhibit G at  Paragraph 8)**.**

## II.    LEGAL ISSUES RAISED BY THE COMPLAINT

The   Complaint .

1.  alleges that the King Cove Land Exchange Agreement does not further the purpose of ANILCA and thus violates ANILCA Section1302(h), thereby raising the issue of whether the Secretary as the chief administrative office of the Department of Interior has the authority to enter the land exchange; and

4

2. contends that the land exchange can only be made through Title XI of ANILCA. Because the land exchange does not provide any ability to construct, operate, or maintain a road across the land which KCC will own, the Title XI issue is not ripe; and

3. argues that the land exchange violates the National Environmental Policy Act and its implementing regulations, 42 USC 4321-4370(h).

## III. MOVANTS

The Movants have a most significant interest in the land exchange occurring and will be severely harmed if Plaintiffs' Prayer for Relief is granted.

### A. The KING COVE NATIVE CORPORATION

KCC is an original village corporation formed on September, 12, 1972 as a "for profit" corporation under Alaska state law pursuant to the Alaska Native Claims Settlement Act, P. L. 92-203. The original shareholders were the Alaska Native residents and others of the village (as certified by the Bureau of Indian Affairs). Each resident received 100 shares of stock.). As required by ANCSA, KCC received a land entitlement of 3 townships, totaling 69, 320 acres in the core township and other lands around King Cove. (Declaration of Dean Gould-Exhibit A at Paragraphs 1 and 2).

KCC's duties include protecting the welfare of its shareholders, all of whom either live in King Cove, have lived in King Cove or have relatives living in King Cove. A top priority of KCC is to provide for safe, dependable, and affordable transportation from King Cove to the Cold Bay Airport. (Declaration of Dean Gould at Paragraph 4).

To accomplish that goal, KCC has offered a portion of its aboriginal land as consideration for the King Cove Land Exchange Agreement with the Department of Interior, which is the subject of this case. This illustrates the extent to which this Land Exchange Agreement is vital to KCC. While King Cove understands that this land exchange does not guarantee that a road will be constructed on its land to be received in this exchange, the exchange is critical to the beginning of this process. (Declaration of Dean Gould-Exhibit A at Paragraph 5).

This is the second time that KCC has agreed to exchange a portion of its aboriginal land to protect the health, safety, and welfare of its people. KCC agreed to donate land in a land exchange approved by Congress in Section 6400 et. seq. of the Omnibus Public Lands Management Act of 2009. That land exchange was rejected by then Secretary of Interior Sally Jewell in 2013. The effort by KCC to achieve its goal of assuring safe, affordable and reliable transportation for its shareholders is continued by defending the land exchange through this Motion to Intervene. (Declaration of Dean Gould-Exhibit A at Paragraph 8).

The interests of KCC will be significantly harmed if the Plaintiffs Prayer for Relief is granted.. The interest of KCC in this case is direct and critical. It is the signatory to the Land Exchange Agreement and will suffer direct and considerable harm if the Agreement is set aside by Plaintiffs' action because it will be unable to achieve its long-term interest in securing the health and safety of is shareholders by gaining access to the Cold Bay Airport. (Declaration of Della Trumble at Paragraph 6).

### B. THE AGDAAGUX TRIBE OF KING COVE

The Agdaagux Tribe of King Cove is a tribal organization recognized and certified by the Dept. of Interior. The Tribe is made up of Aleuts with ancestral, historical, and archaeological

ties to the King Cove and Izembek Refuge area. The tribal members include residents of King Cove, Cold Bay, and elsewhere in the Aleutians East Borough and State of Alaska. Its tribal members have hunted, fished, and subsisted in the Izembek area for thousands of years. The Tribe's ties to the area of the land exchange that is the subject of this case is longtime and eternal. (Declaration of Etta Kuzakin-Exhibit C at Paragraph 2).

The most important obligation of the Agdaagux Tribe is to assure the health and safety of its families, friends, and themselves. This interest was recognized by Congress in Section 6402(b)(3) of the Omnibus Public Lands Management Act which specifically designated the Tribe as a "Cooperating Agency" in the Exchange which was provided for in that Act. There is not a member of the tribe who has not been personally affected by the inability to travel safely between King Cove and the Cold Bay airport. Accordingly, the Tribe's top priority is to work with KCC and the Department of Interior to accomplish this land exchange. Its interests will thus be severely harmed in Plaintiffs' Prayer for Relief is granted. (Declaration of Etta Kuzaskin-Exhibit C at Paragraph 4).

### C. THE NATIVE VILLAGE OF BELKOFSKI

The Native Village of Belkofski is a second tribal organization recognized and certified by the Department of Interior in the King Cove and Izembek Refuge area. The Tribe consists of Aleuts with their own and separate ancestral, historical, and archaeological ties to the area. (Declaration of Leff Kenzuroff- Exhibit D at Paragraph 2).

As related in Paragraph 2 of the Declaration of Luff Kenezuroff, the Native Village of Belkofski was a village located within twelve miles southeast of King Cove. The members of the Village have a particular interest in the land exchange because of that historical location and

the use of the Refuge by its tribal members. Its tribal members have hunted, fished, and subsisted in the Izembek area for thousands of years. The Tribe's ties to the area of the land exchange that is the subject of this case is longtime and eternal. (Declaration of Leff Kenezuroff-Exhibit D at Paragraphs 1 and 2).

Like the Agdaagux Tribe the interests of the Belkofski Tribe will be harmed if Plaintiffs' Prayer for Relief is granted and our interests are far more extensive than the Federal Government. (Declaration of Leff Kenezuroff-Exhibit D at Paragraph 8)

### D. THE ALEUTIANS EAST BOROUGH

The Aleutians East Borough (hereinafter "AEB") is the local government for the Aleutians East region formed under laws of the State of Alaska. The Borough has six different cities located within its boundaries: King Cove. Cold Bay, Sand Point, Akutan, Nelson Lagoon, and False Pass. As the municipal government for the region, the Borough has a direct interest in the outcome of this litigation. Specifically, all residents of King Cove and Cold Bay are also residents of the Borough which feels it has a specific duty to protect and provide for the interests of these residents. The Borough Assembly and Mayor strongly support this Land Exchange. (Declaration of Alvin Osterback-Exhibit F at Paragraphs 1 and 2).

The Borough also has a particular, substantive interest in this exchange. If the exchange goes forward and if the exchange helps King Cove residents to obtain their long-desired road to the Cold Bay airport, the Borough shares road maintenance authority for the road (Declaration of Alvin Osterback-Exhibit F at Paragraph 3).

This interest was also recognized by Congress in Section 6402(b)(3) of the Omnibus Public Lands Management Act which specifically designated the Tribe as a "Cooperating Agency" in that Exchange. The Borough participated as a cooperating agency.

The interests of the Borough will thus be harmed if the Plaintiffs' Prayer for Relief is granted and the Borough's interest in defending this Agreement is far more extensive than the Federal Government. (Declaration of Alvin Osterback-Exhibit F at Paragraph 7).

### E. THE CITY OF KING COVE

The City of King Cove is the municipal city government for the City of King Cove. It was established as a second class city in 1949 under the laws of the Territory of Alaska and became a first class city under the laws of the State of Alaska in 1974. The City is unique among the Movants in that it represents exclusively all the King Cove residents whose future is at stake in this litigation. The Tribes, the Borough, the City of Cold Bay and KCC each represent different groups of individuals who are affected by this exchange in the above captioned case. The City's principal interest is the welfare of its residents to obtain safe, reliable and affordable transportation for its citizens to the all-weather Cold Bay Airport. (Declaration of Henry Mack-Exhibit D at Paragraph 1, 2 and 12).

The Native Nonprofit Aleutians East Tribe operates a clinic in King Cove which cannot handle trauma, maternity/birth, and other major injuries or sickness for its residents. The City's clinic staff can only stabilize patients and work to get these patients to Cold Bay Airport for transportation to Anchorage for treatment. (Declaration of Henry Mack-Exhibit D at Paragraph 6).

The City's interest was also recognized by Congress in the Omnibus Public Lands Exchange Act which specifically designated the City as a "Cooperating Agency" in the Exchange and which was provided for in that Act. (Section 6402(b)(3); P.L.111-11). The City participated as a cooperating agency. (Declaration of Henry Mack-Exhibit D at Par. 7).

King Cove's interest will be severely harmed if Plaintiffs' Prayer for Relief is granted and the City' interest in defending the Agreement is far more extensive than the Federal Government. . (Declaration of Henry Mack-Exhibit D at Par. 12).

### F. THE CITY OF COLD BAY

The City of Cold Bay is the municipal city government for Cold Bay, Alaska. Because there is no road linking them, King Cove and Cold Bay are currently isolated from one another. (Declaration of Dailey Schaack-Exhibit G at Paragraphs 1 and 5).

Cold Bay was established as a second-class city under laws of the State of Alaska. It has a population of approximately 79 persons. Cold Bay is a major center for air transportation on the Alaska Peninsula. State and federal government and airline support services provide the majority of local employment. The community is the location of a state-owned airport, with the 4th longest runway in the state which was built by the U.S. military. (Declaration of Dailey Schaack-Exhibit G at Paragraph 2).

The Native nonprofit Eastern Aleutians Tribes, Inc. operates a clinic in Cold Bay which cannot handle trauma, maternity/birth, and other major injuries or sickness for its residents. The City's clinic staff can only stabilize patients and work to provide them services for transportation to Anchorage for treatment. (Declaration of Dailey Schaack-Exhibit G at Paragraph 6).

The City supports the King Cove Land Exchange because it is the first step in providing a safe, reliable, and affordable all-weather road alternative for King Cove residents, including those needing emergency medical treatment in Anchorage, to access Cold Bay and its airport. (Declaration of Dailey Schaack-Exhibit G at Paragraphs 4 and 7).

A road connecting the communities will also provide significant benefits to the region and Cold Bay. For example, if the exchange is approved and leads to construction of a connecting road, it would encourage more communication between the two cities, including shopping by Cold Bay residents at the King Cove stores and to visit relatives and friends there. In addition, the City has suffered a population loss, particularly of school age children. That has led to the closure of the Cold Bay school thereby discouraging families with school age children to move to or remain as residents of Cold Bay. A road connection could encourage sufficient growth in the Cold Bay population to allow the school to be reopened. (Declaration of Dailey Schaack-Exhibit G at Paragraphs 3, 4 and 5).

Cold Bay's interest will be severely harmed if Plaintiffs' Prayer for Relief is granted. While the federal government and the City of Cold Bay are both interested in defending the Land Exchange. the City of Cold Bay's interest in supporting this Land Exchange is unique to the City which as the location of the Cold Bay airport, is far more extensive and not the same as the federal Government in this case. (Declaration of Dailey Schaack-Exhibit G at Paragraph 8).

IV. **DISCUSSION**

A. **MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT**

FRCP 24 (a)(2) requires that, on timely motion, the court permit anyone to intervene who satisfies four elements: 1) timeliness of the motion; 2) that they have a cognizable interest; 3)

that disposition of the action may impair the applicant's ability to protect that interest; and 4) lack of adequate representation by existing parties. *The Wilderness Soc'y v. United States Forest Serv.,* 630 F.3d 1173 (9th Cir., 2011); *Forest Conservation Council v. United States,* 66 F.3d 1369, 1493 (9th Cir. 1995).

Because a liberal policy in favor of intervention encourages both efficient resolutions and broadened access to the courts, when evaluating whether the requirements of Rule 24(a)(2) are met, a court normally follows "practical and equitable considerations" and construes the rule "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002). Generally, a prospective intervenor's interests qualify as "significantly protectable" if the interest is protectable under some law and a relationship exists between the legally protected interest and the claims at issue. *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993). In all other cases, such an interest is demonstrated if it will suffer a practical impairment as a result of the pending litigation. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Movants satisfy all of these requirements and should be granted intervention as of right.

1. This Motion is Timely

Timeliness is determined based on a consideration of all the circumstances, weighing the factors of (i) time elapsed since the inception of the suit; (ii) the probability of prejudice to existing parties in the case; (iii) the purpose for which intervention is sought; and, (iv) the need for intervention as a means of preserving the applicant's rights. *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). See also *Smith et al v. Marsh et al*, 194 F.3d 1045 (9th Cir., 1999) (Intervenors failed to move to intervene for 27 months.)

In this case the Plaintiffs filed their Complaint on January 31, 2018, and the case is still in the pleadings stage. *Citizens for Balanced Use v. Montana Wilderness Assoc*. 647 F.3d 893, 897 (9th Cir. 2011) (motion to intervene granted as timely when filed less than three months after Complaint filed and less than two weeks after Forest Service filed its answer.) *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996) (finding application to intervene timely when filed before any substantive rulings had been made). See also *Friends of Animals v. Kempthorne*, 452 F.Supp.2d 64, 66-67 (D.D.C. 2006) (motion to intervene timely where case still in pleadings stage). Because the case is still at a preliminary stage there is no prejudice to existing parties from the requested intervention. *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion for intervention timely when filed prior to answer to complaint).

Movants' purpose in intervening is to join the Department of Interior in defending the King Cove Land Exchange Agreement signed between the Department of Interior and KCC. Movants have substantial and longstanding, specific rights and interests in this Exchange. Movants ability to realize the exchange will be jeopardized, delayed, or precluded, by an adverse decision in this case. Intervention is necessary to protect those rights and interests. Considering the short amount of time since the filing of the Complaint, the fact that Defendants have just filed their Answer, the substantial rights and interests the Proposed Defendant Intervenors have at stake, and the absence of prejudice to any party, this motion "cannot be regarded as untimely." *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1076 (D.C. Cir. 1998). See *Akiachak Native Community v. Department of Interior,* 584 F. Supp.2d 1 (D.D.C. 2008).

2. **Movants' "Significantly Protectable Interests" Could Be Impaired By this Action.**

The "significantly protectable interest" requirement is intended to serve primarily as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

Movants are clearly "concerned persons" and have a significant protectable interest because they and their members have historically led the effort to obtain safe, reliable, and affordable transportation for all residents of King Cove to Cold Bay Airport. This is demonstrated by KCC's willingness to use a portion of its land to effectuate the Exchange and supported by the Declarations of Dean Gould (Exhibit A), Della Tumble (Exhibit B), Etta Kuzakin (Exhibit C), Leff Kenzuroff (Exhibit D), Henry Mack (Exhibit E), Alvin Osterback (Exhibit F) and Dailey Schaack (Exhibit G).

a. KCC is a signatory to the King Cove Land Exchange Agreement, its lands are part of the exchange, and it was previously recognized by Congress in OPLMA Section 6402(b) as a cooperating agency in a prior land exchange. The land exchange will be the first step in providing the Members of KCC with access to safe, reliable and affordable transportation during medical emergencies requiring medevac to Anchorage.

b. Agdaagux Tribe is a Department of Interior certified tribe which has among its duties the protection of its tribal members health, safety, and welfare which in turn is dependent on the success of the Land Exchange Agreement. The land exchange will be the first step in providing the Members of KCC with access to safe, reliable and affordable transportation during medical emergencies requiring medevac to

14

Anchorage  It was recognized by Congress in Section 6402(b)(3) of OPLMA as a cooperating agency in a prior land exchange proposal.

c. Native Village of Belkofski is a Department of Interior certified tribe which also has among its duties the protection of its tribal members which is dependent on the success of the Land Exchange. Some tribal members have an ancestral stake in the area of the land exchange. The tribe was also recognized by Congress in Section 6402(b) of OPLMA a cooperating agency in a prior land exchange proposal.

d. The Aleutians East Borough has a significant interest in assuring its citizens the ability of safe, reliable, and affordable access to the Cold Bay airport for medevacs to Anchorage when inclement weather in the area makes other transportation infeasible or dangerous. The area wide municipality which shares statutory road building and maintenance authority under the laws of the State of Alaska and which has a number of villages/cities located within the Borough who depend on the operation of Cold Bay Airport. For these reasons the Borough was also recognized by Congress in Section 6402(b)(3)(B) as a cooperating agency in a prior land exchange proposal.

e. The City of King Cove is a first-class city, of which all residents must face uncertain and dangerous medical evacuations and which has also been recognized by Congress in Section 6402(b) of OPLMA as a cooperating agency in a prior land exchange proposal.

f. The City of Cold Bay has a strong interest in the Land Exchange as the first step toward construction of a road that will allow residents of King Cove access to the Cold Bay Airport and will link Cold Bay to the facilities in King Cove.

Courts throughout the nation have granted intervention for interests no more important to those intervenors than achieving safe, reliable and affordable access is to Movants. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 135-136 (1967), *vacated on other grounds sub nom. Utah Public Services Comm'n v. El Paso Natural Gas Co.,* 395 U.S. 464 (1969) (economic loss from implementation of proposed consent decree warrants intervention); *Kleissler v. U.S. Forest Service,* 157 F.3d 964, 973 (3d Cir. 1998) (intervenors' interest in *future* business operations is "substantial interest, directly related to and threatened by" regulation challenging those operations, and "meets the requirements of Rule 24(a)"). See *Wilderness Society v. U.S. Forest Service* 630 F.3d 1173, 1177 (9th Circuit 2011) (holding that the 9th circuit abandoned its prior "federal defendant rule and also that when putative intervenors demonstrate the "significantly protectable" interest necessary for intervention of right in a NEPA case, the operative inquiry should be whether the "interest is protectable under some law" and whether "there is a relationship between the legally protected interest and the claims at issue.") Finally, simple fairness should authorize the intervention of those affected by Plaintiffs' attempt to void the King Cove Land Exchange Agreement.

The virtually certain loss or delay of Movants achieving all weather access to Cold Bay Airport if the Land Exchanges is enjoined, delayed, or vacated provides strongly support the conclusion that Movants have a significant protectable interest justifying intervention as of right.

**3. Disposition of the Action May Impair the Proposed Defendant Intervenors' Ability to Protect Their Cognizable Interests.**

When an action seeks injunctive relief which, if granted, could affect a putative intervenor's interest, practical impairment of the ability to protect that interest results if intervention is not

allowed. *See Forest Conservation Council,* 66 F.3d at 1498. The putative intervenor must be made a party to the action to ensure that it has a legal means to challenge the injunction. *Id.*

Movants are "so situated that disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest." FRCP 24(a) (2) (emphasis added). A ruling by this Court adverse to the Movants, would impair their ability to obtain safe, reliable, affordable access to Cold Bay Airport for medical evacuations during the bad weather events that frequents the area.

### 4. Movants and Their Citizens and Members Are Not Adequately Represented.

In addressing this prong of the Rule 24 (a) test an intervenor need only show that the representation *may be inadequate*, not that it is inadequate. *Conservation Law Foundation v. United States*, 966 F.2d 39, 44 (1st Cir. 1992) (Emphasis added). As pointed out by the D.C. Circuit Court of Appeals in *Fund for Animals*, 322 F.3d supra. at 735:

> The Supreme Court has held that this 'requirement of the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-539 n.10 (1972); and the burden of making that showing should be treated as minimal. Id. Citing *Trbovich*, "we have described this requirement as "not onerous." *Diamond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); see also *Foster*, 655 F.2d at 1325; *American Tel. & Tel. Co*., 642 F.2d at 1293 (stating that a petitioner " 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee'").

Indeed, the AT&T case cited by *Fund for Animals* holds that "the burden is on those opposing intervention to show that the representation for the [Proposed Defendant Intervenors] will be adequate." *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). (Emphasis added).

Movants interests are clearly not represented by the Defendants who have no private ownership interests, such as KCC, or the need demonstrated by the other Movants for adequate access to the Cold Bay Airport. As a federal governmental body, the Defendant must represent

17

the broad public interest, not just the specific concerns of the Movants. *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994). Indeed, the Defendants already have such access to the Cold Bay airport since the Refuge headquarters is located in Cold Bay and already connected by road to that airport. See *United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986).

Movants' citizens' and members' access needs and health and safety interests are of the kind that may "become lost in the thicket of sometimes inconsistent government policies." *Kliessler*, 157 F.3d at 973-974. Such differences in interests between Movants and the Defendant Department of Interior, et.al show that this prong of the test has been met warrant Movants' intervention of right. See *Trbovich,* supra., at 539*, Kiessler*, 157 F.3d at 973-974.

B. **ALTERNATIVELY, MOVANTS SHOULD BE GRANTED PERMISSIVE INTERVENTION**

Alternatively, if intervention as of right is denied, the Court should grant Movants permissive intervention. Under Rule 24(b)(2), an applicant may be permitted to intervene upon timely application if it has a claim or defense that shares a common question of law or fact with the main action. As explained above, this motion is timely and there is a complete identity between the Defendant's defenses and those of Movants. Accordingly, permissive intervention should be granted if this Court does not allow Movants to intervene as of right. *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996). See also *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5 10-11 (D.D. C. 2007).

## CONCLUSION

For the foregoing reasons, the Movants meet all four prongs of Fed. R. Civ. P. 24 (a) and thus Movants' Motion to Intervene as of right should be granted.

April 10, 2018                               Respectfully submitted,


                                             s/Steven W. Silver
                                             Steven W. Silver
                                             Robertson, Monagle, and Eastaugh
                                             1810 Samuel Morse Dr. Suite 202
                                             Reston, VA 20190
                                             703-527-4414 office
                                             571-313-1973 fax
                                             ssilver628@aol.com
                                             AK Bar # 7606089;


                                             s/ James F. Clark
                                             James F. Clark
                                             Law Office of James F. Clark
                                             1109 C Street
                                             Juneau, AK 99801
                                             (907) 586-0122  (office)
                                             (907) 586-1093 (fax)
                                             jfclarkiii@gmail.com
                                             AK Bar # 6907025

                                             Attorneys for Proposed Defendant-Intervenors