Katherine Strong (AK Bar No. 1105033)
Brook Brisson (AK Bar No. 0905013)
Valerie Brown (AK Bar No. 9712099)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
Fax: (907) 276-7110
kstrong@trustees.org
bbrisson@trustees.org
vbrown@trustees.org

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, THE WILDERNESS SOCIETY, NATIONAL AUDUBON SOCIETY, WILDERNESS WATCH, CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, NATIONAL WILDLIFE REFUGE ASSOCIATION, ALASKA WILDERNESS LEAGUE, and SIERRA CLUB<br><br>　　　　　　　　　Plaintiffs,<br>　　　v.<br><br>RYAN ZINKE, in his official capacity as Secretary of the U.S. Department of the Interior, U.S. DEPARTMENT OF THE INTERIOR, and U.S. FISH AND WILDLIFE SERVICE,<br><br>　　　　　　　　　Defendants. | Case No. 3:18-cv-00029-TMB<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** (Administrative Procedure Act, 5 U.S.C. §§ 702–06; Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3101 et. seq., National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h, Endangered Species Act, 16 U.S.C. §§ 1531–1544) |

Plaintiffs Friends of Alaska National Wildlife Refuges, The Wilderness Society, Defenders of Wildlife, National Audubon Society, Wilderness Watch, Center for Biological Diversity, National Wildlife Refuge Association, Alaska Wilderness League, and Sierra Club (collectively "Friends") file this First Amended Complaint for Declaratory and Injunctive Relief, alleging:

## I.     NATURE OF THE CASE

1.     This action seeks to protect Friends', and their members' and supporters', interest in the Izembek National Wildlife Refuge ("Izembek" or "Refuge") and Izembek Wilderness from the unlawful exchange of Refuge lands in violation of the Alaska National Interest Lands Conservation Act ("ANILCA"), the National Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA").

2.     The U.S. Department of the Interior ("Interior") recently entered into a land exchange agreement with the King Cove Corporation ("KCC") to trade away lands within Izembek's designated Wilderness for KCC-owned lands to allow for the construction of a road connecting the community of King Cove to the Cold Bay airport. Interior cited to ANILCA § 1302(h) as providing the authority to enter into the exchange.

3.     The exchange does not further the purposes of ANILCA as required by ANILCA § 1302(h). The Secretary failed to follow the requirements of both Title XI of ANILCA, NEPA, 42 U.S.C. §§ 4321–4370h, and NEPA's implementing regulations, and the ESA, 16 U.S.C. §§ 1531–1544, and the ESA's implementing regulations.

4.     Friends seeks vacatur, declaratory, and injunctive relief because the land exchange decision is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

First Amended Compl. for Declaratory and Injunctive Relief                Page 2 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 2 of 27

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over the parties and subject matter of this action pursuant to 5 U.S.C. §§ 702–06 (Administrative Procedure Act), 28 U.S.C. § 2201–02 (declaratory judgment), and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    Venue is proper in the District of Alaska under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within the District of Alaska and the lands at issue are in Alaska.

7.    Pursuant to 16 U.S.C. § 1540(g)(2), on January 31, 2018, Friends provided written notice of violation of the ESA to FWS and DOI, and informed the agencies of Friends' intent to sue if consultation was not commenced within sixty days of transmittal. A true and correct copy of the notice letter is attached as Exhibit A. The allegations in Exhibit A are incorporated here by reference.

## III.    PARTIES

8.    Plaintiff Friends of Alaska National Wildlife Refuges is a nonprofit organization founded in 2005 and based in Anchorage, Alaska. It is a volunteer group that works to assist the U.S. Fish and Wildlife Service ("FWS") to accomplish its congressionally-mandated mission for the sixteen national wildlife refuges in Alaska. Its mission is to promote the conservation of all Alaska National Wildlife Refuges through understanding and appreciation, and to assist the FWS through outreach to decision-makers. It has sent members and supporters to Izembek for volunteer projects in the past and is organizing another volunteer project in the summer or fall of 2018.

9.    Plaintiff The Wilderness Society is a nonprofit organization headquartered in Washington, D.C., with offices throughout the country, including Alaska. Its overall mission is

First Amended Compl. for Declaratory and Injunctive Relief                              Page 3 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 3 of 27

to protect wilderness and inspire Americans to care for wild places. The goal of its Alaska program is to permanently protect special places in America's arctic and sub-arctic, including Alaska's national wildlife refuges and designated Wilderness areas in Alaska. This includes Izembek and the designated Wilderness lands there.

10.     Plaintiff National Audubon Society is a nonprofit organization. Its mission is to conserve and restore natural ecosystems, focusing on birds, other wildlife, and their habitats, for the benefit of humanity and the earth's biological diversity. Audubon uses science, advocacy, education and conservation to achieve its goal. Audubon operates state programs around the country, including in Alaska. Audubon Alaska works to conserve Alaska's incredible birds, including birds that rely on Izembek and the bird habitat in the Refuge.

11.     Plaintiff Wilderness Watch is a nonprofit organization founded in 1989. Its mission is to defend the nation's 109 million-acre National Wilderness Preservation System. Wilderness Watch advocates for appropriate stewardship according to the requirements of the Wilderness Act of 1964. Wilderness Watch monitors agency stewardship of designated Wilderness in Alaska and organizes its members to participate in public processes in Alaska that impact designated Wilderness.

12.     Plaintiff Center for Biological Diversity is a nonprofit organization that works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats throughout the United States, including Alaska. The Center has a long-standing interest in the conservation of threatened and endangered species and their habitats in Alaska. Specifically, the Center has advocated for protections of the southwest Alaska sea otter, Steller's eider, Steller sea lion, brown bear, and other wildlife that occur in or near Izembek.

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 4 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 4 of 27

13.     Plaintiff Defenders of Wildlife is a nonprofit organization founded in 1947. Its mission is to protect all native animals and plants in their natural communities. It advocates for the sound management of our public lands, including national wildlife refuges. Defenders of Wildlife has an office in Anchorage and one of the refuges that Defenders of Wildlife works to protect is Izembek.

14.     Plaintiff National Wildlife Refuge Association is a non-profit organization focused exclusively on protecting and promoting the 850 million-acre National Wildlife Refuge System, the world's largest network of lands and waters set aside for wildlife conservation. Founded in 1975, its mission is to conserve America's wildlife heritage for future generations through strategic programs that enhance the National Wildlife Refuge System and the landscapes beyond its boundaries. With approximately 80% of the land mass of the National Wildlife Refuge System in Alaska, the National Wildlife Refuge Association has throughout its history focused significant resources on protecting and enhancing Refuge System resources throughout the state.

15.     Plaintiff Alaska Wilderness League is a non-profit organization founded in 1993 to further the protection of public lands and waters in Alaska. Its mission is to lead the effort to preserve Alaska's wild lands and waters by engaging citizens and decision makers. It has offices in Anchorage and Washington, D.C., as well as other locations.

16.     Plaintiff Sierra Club is the nation's oldest and largest grassroots environmental organization. The Sierra Club is a national nonprofit organization with over 830,000 members dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 5 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 5 of 27

to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass a variety of environmental issues in Alaska and beyond, including an interest in protecting designated Wilderness. The Alaska Chapter of the Sierra Club has over 1,800 members.

17.     Friends and their members and supporters have long-standing interests in protecting Izembek from a land exchange and road construction. These interests include preserving and enjoying the wildlife, habitat, and wilderness values of Izembek for recreational, aesthetic, and environmental protection purposes. Friends' staff, members, and supporters have visited Izembek, enjoyed viewing its wildlife, and experienced the Wilderness and habitat that Izembek provides. Friends and their members have strong recreational, aesthetic, scientific, and other interests in the wildlife that uses and depends on Izembek, including migratory birds and terrestrial mammals.

18.     Friends members' and supporters' interests in Izembek are adversely affected by the land exchange agreement because it will result in the removal of designated Wilderness from the Refuge for the purpose of constructing a road through the heart of Izembek. The removal of designated Wilderness from the National Wilderness Preservation System and the National Wildlife Refuge System harms the interests of Friends' members and supporters. These actual, concrete injuries are fairly traceable to Interior's decision to enter into the land exchange agreement, and would be redressed by the relief sought in this case.

19.     Defendant Ryan Zinke is the Secretary of the U.S. Department of the Interior and is being sued in his official capacity. As the Secretary, he is charged with the supervision and management of all decisions, operations, and activities of the Department and its divisions.

20.     Defendant U.S. Department of the Interior is an executive agency of the United States responsible for oversight of the National Wildlife Refuge System and public lands.

First Amended Compl. for Declaratory and Injunctive Relief                     Page 6 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 6 of 27

21.     Defendant U.S. Fish and Wildlife Service is an agency within the U.S. Department of the Interior and is responsible for the management of the National Wildlife Refuge System.

## IV.     STATUTORY FRAMEWORK

22.     Congress passed ANILCA to "preserve unrivaled scenic and geological values associated with natural landscapes; to provide for the maintenance of sound populations of, and habitat for, wildlife species of inestimable values . . . , including those species dependent on vast relatively undeveloped areas; to preserve in their natural state extensive unaltered arctic tundra, boreal forest, and coastal rainforest ecosystems; to protect the resources related to subsistence needs; to protect and preserve historic and archeological sites, rivers, and lands, and to preserve wilderness resource values and related recreational opportunities . . . ; and to maintain opportunities for scientific research and undisturbed ecosystems." 16 U.S.C. § 3101(b).

23.     Title XIII of ANILCA provides that "the Secretary is authorized, consistent with other applicable law in order to carry out the purposes of this Act, to acquire by purchase, donation, exchange, or otherwise any lands within the boundaries of any conservation system unit." 16 U.S.C. § 3192(a).

24.     The Secretary is permitted to exchange lands under ANILCA "on the basis of equal value" or, if the parties agree to an unequal-value exchange, the Secretary must determine that the exchange is in the public interest. 16 U.S.C. § 3192(h)(1).

25.     The Secretary may only exchange lands under ANILCA if the exchange furthers "the purposes of [ANILCA]." 16 U.S.C. § 3192(h)(1).

First Amended Compl. for Declaratory and Injunctive Relief                     Page 7 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 7 of 27

26.     Congress included this exchange provision to authorize the Secretary to acquire inholdings in conservation system units to further the purposes of those units, without resorting to condemnation proceedings.

27.     Congress passed the Alaska Native Claims Settlement Act ("ANCSA") to provide for the expeditious, fair, and just settlement of certain land claims of Alaska Natives. 43 U.S.C. § 1601.

28.     ANCSA requires that where a patent conveys lands within the National Wildlife Refuge System to any Village Corporation, that patent "shall contain a provision that such lands remain subject to the laws and regulations governing use and development of such Refuge." 43 U.S.C. § 1621(g).

29.     Title XI of ANILCA establishes a "single comprehensive statutory authority for the approval or disapproval of applications for [transportation and utility] systems" through Alaska public lands. 16 U.S.C. § 3161(c). This applies to roads constructed through conservation system units, including National Wildlife Refuges and designated Wilderness. 16 U.S.C. § 3162(4).

30.     ANILCA requires that transportation facilities "be approved or disapproved in accordance with the procedures set forth in this subchapter." 16 U.S.C. § 3162; *see also* 16 U.S.C. § 3164(a) ("Notwithstanding any provision of applicable law, no action by any Federal agency under applicable law with respect to the approval or disapproval of the authorization, in whole or in part, of any transportation or utility system shall have any force or effect unless the provisions of this section are complied with.").

31.     Transportation systems may not be constructed through designated Wilderness without a recommendation by the President and approval by Congress. 16 U.S.C. § 3166(b), (c).

First Amended Compl. for Declaratory and Injunctive Relief                    Page 8 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 8 of 27

32.     The Wilderness Act was passed to protect for present and future generations "the benefits of an enduring resource of wilderness" and establish the National Wilderness Preservation System to protect areas and provide for their use and enjoyment as unimpaired wilderness. 16 U.S.C. § 1131(a).

33.     Congress directed that Wilderness be managed to preserve its wilderness character, devoting it to "the public purposes of recreational, scenic, scientific, educational, conservation, and historical use" 16 U.S.C. § 1133(b).

34.     The mission of the National Wildlife Refuge System is "to administer a national network of lands and waters for the conservation, management, and where appropriate, restoration of fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans." 16 U.S.C. § 668dd(a)(2).

35.     Refuges must be managed "to fulfill the mission of the System, as well as the specific purposes for which that refuge was established." 16 U.S.C. § 668dd(a)(3)(A); *see also* 16 U.S.C. § 668dd(a)(4)(B) & (D) (requiring the Secretary to administer the refuge to achieve the purposes of the refuge and the mission of the Refuge System).

36.     NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). NEPA's twin aims are to ensure that federal agencies take a hard look at the environmental impacts of their proposed actions before taking an action and to ensure that agencies provide relevant information to the public so the public can play a role in both the decision-making process and the implementation of the decision. 40 C.F.R. § 1502.1.

37.     NEPA requires federal agencies to prepare a detailed environmental impact statement ("EIS") for every major federal action that will have a significant impact on the quality of the human environment. 42 U.S.C. § 4332. Such a statement is required to "provide full and

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 9 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 9 of 27

fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1.

38.     Federal agencies shall supplement an EIS if there are "substantial changes to the proposed action that are relevant to environmental concerns" or "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9.

39.     Congress enacted the ESA to protect and conserve threatened and endangered species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). It is "the policy of Congress that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of [the ESA]." 16 U.S.C. § 1531(c).

40.     The FWS and the National Marine Fisheries Service (NMFS) share responsibilities for administering the ESA and performing consultations. 50 C.F.R. § 402.01(b). Certain marine threatened or endangered species are under the jurisdiction of NMFS; all other listed species are under the jurisdiction of FWS. 50 C.F.R. § 402.01(b).

41.     Section 7(a)(2) of the ESA imposes the obligation on federal agencies to consult with either FWS or NMFS to ensure protection of listed species: "Each Federal agency, shall, in consultation with and with the assistance of the [Secretary of the Interior or the Secretary of Commerce], insure that any action authorized, funded or carried out by such agency . . .  is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat . . . ."  16 U.S.C. § 1536(a)(2).

First Amended Compl. for Declaratory and Injunctive Relief                                     Page 10 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 10 of 27

42.     The ESA prescribes a three-step process to ensure compliance with its substantive provisions by federal agencies. A federal agency proposing to take an action must inquire of the Secretary of Interior or Secretary of Commerce whether any threatened or endangered species "may be present" in the area of the proposed action. 16 U.S.C. § 1536(c)(1). If the answer is affirmative, such agency shall conduct a biological assessment to determine whether such species "is likely to be affected" by the action. *Id.*

43.     If the biological assessment determines that an action "may affect listed species or critical habitat," formal consultation with the Secretary is required. 16 U.S.C. § 1536(a)(3); 50 C.F.R. § 402.14. Formal consultation concludes with the Service's issuance of a biological opinion. 16 U.S.C. §1536(b)(3).

44.     If it is determined by the federal agency, "with the written concurrence of [FWS or NMFS], that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary." 50 C.F.R. § 402.13.

## V.     IZEMBEK BACKGROUND AND LAND EXCHANGE

45.     Izembek has been recognized for decades as an area with particularly valuable wildlife habitat. Efforts to protect Izembek began in the early 1940s. The area was first protected in 1960 as the Izembek National Wildlife Range ("Range") as a "refuge, breeding ground, and management area for all forms of wildlife" because of the importance of the area to waterfowl, brown bear, and caribou. Establishing the Izembek National Wildlife Range, Pub. Land Order 2216, 25 Fed. Reg. 12599, 12600 (Dec. 6, 1960). In establishing the Range, the Department of the Interior recognized that it "contain[s] the most important concentration point for waterfowl in Alaska." Office of the Secretary, Department of the Interior, Information Service, Press Release Dec. 7, 1960.

First Amended Compl. for Declaratory and Injunctive Relief                    Page 11 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 11 of 27

46.     The area's importance was reaffirmed in 1980, when Congress renamed the

Izembek Range as the Izembek National Wildlife Refuge and designated approximately 307,982

of the 315,000 acres as Wilderness ("the Izembek Wilderness"). Alaska National Interest Lands

Conservation Act, Pub. L. No. 96–487, §§ 303(3)(A), 702(6), 94 Stat. 2371 (1980).

47.     Congress established Izembek because of its ecologically unique habitat and

wilderness characteristics. Specifically, Congress established Izembek for the following

purposes:

> (i)     [T]o conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, waterfowl, shorebirds and other migratory birds, brown bears and salmonids;
>
> (ii)    [T]o fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;
>
> (iii)   [T]o provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and
>
> (iv)    [T]o ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

*Id.* § 303(3)(B).

48.     When drafting ANILCA, Congress noted:

> The Izembek Wilderness possesses outstanding scenery, key populations of brown bear, caribou and other wilderness-related wildlife, and critical watersheds to Izembek Lagoon. About 68 percent of the total lands in Izembek Lagoon are covered with the largest eelgrass beds in the world. These beds are utilized by millions of waterfowl for migration and wintering purposes. A wilderness designation will protect this critically important habitat by restricting access to the lagoon.

H. R. Rep. No. 96-97, at 136 (1979).

First Amended Compl. for Declaratory and Injunctive Relief                 Page 12 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 12 of 27

49.     Izembek is one of the world's most important migratory bird staging and wintering habitats, supporting millions of migratory waterfowl and shorebirds in its coastal lagoons and freshwater wetlands complex.

50.     Izembek and its adjacent wetlands and nearshore marine environment provide habitat for several federally-protected species, such as the Steller's eider, northern sea otter, and Steller sea lion. Upon information and belief, no biological assessment has been prepared to consider impacts from road construction on these species.

51.     The Alaska breeding population of Steller's eider was listed as threatened in 1997, and its designated critical habitat includes areas within the Izembek Refuge. Final EIS 3-173 – 3-174.

52.     Northern sea otters, listed as threatened in 2005, appear year round in marine waters adjacent to the Izembek Refuge. Izembek Lagoon was designated as part of the northern sea otters' critical habitat in 2009. Final EIS 3-179 - 3-181.

53.     Steller's eiders and northern sea otters are species under the jurisdiction of FWS for purposes of the ESA.

54.     The NMFS classified the western distinct population segment of Steller sea lion as endangered in 1997, and its 20-nautical mile critical habitat buffer extends into the Izembek Lagoon. Final EIS 3-185.

55.     Izembek also provides high quality brown bear and caribou habitat.

56.     Izembek is internationally-recognized for its unique and ecologically significant wetlands and wildlife. It was designated as a Wetland of International Importance by the Ramsar Convention on Wetlands of International Importance in 1986. Listing under this Convention "reflects a national commitment to maintain the ecological characteristics of the area." Letter

First Amended Compl. for Declaratory and Injunctive Relief                                   Page 13 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 13 of 27

from Director, U.S. Fish and Wildlife Service, to Robin West, Manager, Izembek National Wildlife Refuge (June 16, 1989).

57.     The FWS has evaluated the effects of a road from King Cove to Cold Bay multiple times.

58.     In the early 1980s, DOI conducted an analysis of a road through Izembek, concluding that a road could cause long-term damage to the Refuge's unique and ecologically important habitats.

59.     In 1985, DOI acknowledged that a road through Izembek Wilderness could only be built with congressional approval under Title XI of ANILCA. Bristol Bay Reg'l Mgmt. Plan and Final Environmental Impact Statement at 8-16, 8-101, U.S. Dep't of Interior (1985); *see also* Record of Decision for the Izembek Nat'l Wildlife Refuge Comprehensive Conservation Plan, 122 & Appendix A (August 1, 1985) (noting that congressional approval will be required to build a road across Izembek Wilderness).

60.     In 1985, DOI also concluded that "[t]he presence of a road [connecting King Cove and Cold Bay], vehicular traffic, and intensified human use could alter migratory patterns" of the "nearly 6,000–7,000" caribou that migrate through the isthmus twice a year between their wintering range and calving grounds, and that roads built in other areas of the state have "pose[d] a serious barrier to caribou movements." Bristol Bay Reg'l Mgmt. Plan and Final Environmental Impact Statement at 8-32, U.S. Dep't of Interior (1985).

61.     The Bristol Bay Regional Management Plan further found that a road "would result in expanded human presence and traffic . . . provid[ing] greater access into a relatively remote, undisturbed region in the Joshua Green River drainage and in key bear use areas in Right and Lefthand valleys" such that "[b]ears could be expected to change their behavior . . . and

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 14 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 14 of 27

might abandon some traditional use areas." Bristol Bay Reg'l Mgmt. Plan and Final

Environmental Impact Statement at 8-38, U.S. Dep't of Interior (1985).

62. DOI concluded that "[t]he King Cove-Cold Bay road could have major, local

impacts" to wilderness values. Bristol Bay Reg'l Mgmt. Plan and Final Environmental Impact

Statement at 8-67, U.S. Dep't of Interior (1985).

63. In 1996, FWS again addressed the issue of a road through Izembek and again

found that a road would have unacceptable environmental impacts.

64. In 1997, KCC offered to exchange KCC lands at the mouth of the Kinzarof

Lagoon for a right-of-way through Izembek. FWS declined the offer because of adverse impacts

of a road to wildlife.

65. Also in 1997, Senator Frank Murkowski introduced a bill that would have

required the Secretary to allow road construction through Izembek. That bill was amended and

eventually passed as part of an appropriations act. Instead of mandating a road, the legislation

expressly prohibited a road. Rather, it authorized $37.5 million dollars for various projects to

improve health and safety infrastructure and services in King Cove. Omnibus Consolidated and

Emergency Supplemental Appropriations Act, Pub. L. No. 105–277, § 353, 112 Stat. 2681, 302–

03 (1999) (specifically prohibiting the construction of any road or other facilities within

Izembek). One of the projects authorized was the purchase of a hovercraft and construction of a

hovercraft facility outside of the Refuge.

66. In 1998, FWS called the proposal to build a road "the greatest known potential

threat to wildlife and wilderness values within the Izembek complex." Land Protection Plan for

Izembek National Wildlife Refuge Complex, Cold Bay, Alaska at 53, U.S. Dep't of Interior,

FWS, Region 7, Anchorage, AK (March 1998). FWS again noted the "significant wildlife and

First Amended Compl. for Declaratory and Injunctive Relief                                          Page 15 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 15 of 27

wilderness resources in the area," including important wintering area and migration corridor of caribou, an adjacent "key brown bear natal area that supports the highest densities of bears on the lower Alaska Peninsula," and "outstanding and essential habitat for a variety of species, including the threatened Steller's eider, Pacific black brant, tundra swan and emperor goose." Land Protection Plan for Izembek National Wildlife Refuge Complex, Cold Bay, Alaska at 53, U.S. Dep't of Interior, FWS, Region 7, Anchorage, AK (March 1998).

67.     From 2001 to 2004, the U.S. Army Corps of Engineers ("Corps") completed a National Environmental Policy Act review for the hovercraft terminal. As part of the analysis, the Corps concluded that a hovercraft operating between two terminals was the preferred alternative.

68.     Following the Corps' analysis and decision, the Aleutians East Borough ("Borough") purchased a hovercraft and constructed a portion of the road to the hovercraft facility. During that time, the hovercraft was operated out of an existing facility and successfully completed at least 22 medical evacuations in varying weather conditions.

69.     Despite calling the hovercraft a "life-saving machine . . . doing what it is supposed to do," the Borough suspended hovercraft operations in 2010, citing unreliability and cost.

70.     The Borough continued road construction to what was supposed to serve as the hovercraft facility, telling the Corps that the facility would be used for a landing craft or passenger ferry instead.

71.     During this same time, new bills were introduced in Congress to mandate a land exchange to allow for road construction through Izembek. Rather than passing legislation that

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 16 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 16 of 27

mandated an exchange for road construction, Congress amended the bill to instead allow the Secretary to decide whether to exchange the Refuge lands if doing so was in the public interest.

72.     That legislation was included in a national lands bill that passed in 2009: the Omnibus Public Lands Management Act (OPLMA).

73.     In OPLMA, Congress directed the Secretary to comply with NEPA and determine "whether to carry out the land exchange."

74.     For the land exchange considered under OPLMA, KCC offered 13,300 acres of its land and the State of Alaska offered to exchange 43,093 acres of its lands to the federal government.

75.     FWS prepared an EIS to analyze the impacts of the exchange under OPLMA, and to document the results of this extensive scientific and public process. U.S. Dep't of the Interior, U.S. Fish and Wildlife Service, Izembek Nat'l Wildlife Refuge Land Exchange/Road Corridor Final Environmental Impact Statement ["Final EIS"] (Feb. 5, 2013).

76.     Aknowledging that threatened and listed species "may be present" in the area under consideration for exchange, FWS prepared biological assessments under ESA section 7 to evaluate impacts to Steller's eiders, northern sea otters, and Steller sea lions. *See* U.S. DOI FISH & WILDLIFE SERVICE, BIOLOGICAL ASSESSMENT OF THE STELLER'S EIDER AND NORTHERN SEA OTTER FOR THE IZEMBEK NATIONAL WILDLIFE REFUGE LAND EXCHANGE/ROAD CORRIDOR EIS (Feb. 2013) [hereinafter FWS ASSESSMENT]; U.S. DOI FISH & WILDLIFE SERVICE, PROJECT DESCRIPTION AND EFFECTS ANALYSIS FOR ENDANGERED SPECIES STELLER SEA LION, IZEMBEK NATIONAL WILDLIFE REFUGE LAND EXCHANGE/ROAD CORRIDOR EIS (Feb. 2013) [hereinafter NMFS ASSESSMENT].

First Amended Compl. for Declaratory and Injunctive Relief                    Page 17 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 17 of 27

77.     FWS prepared its biological assessments solely to evaluate impacts of the

preferred alternative in the Final EIS — the No Action Alternative — under which the land

exchange would not occur and no road would be built. These biological assessments did not

study the impacts of road construction. FWS ASSESSMENT, 11; NMFS ASSESSMENT, 10.

78.     After preparing these biological assessments, FWS determined through informal

consultation that the No Action Alternative would have "no effect" any listed species or critical

habitat in the Izembek Refuge. FWS ASSESSMENT 15; NMFS ASSESSMENT 11. No further action

was undertaken.

79.     In its Final EIS, FWS specifically stated that the selection of any road alternatives

would likely require major permits, approvals, and consultations, including FWS and NMFS

Section 7 Consultation under the ESA.  Final EIS at 1-25.

80.     After completion of the Final EIS, Secretary Jewell made a decision not to

proceed with the land exchange. U.S. Dep't of the Interior, U.S. Fish and Wildlife Service,

Record of Decision, Izembek Nat'l Wildlife Refuge Land Exchange/Road Corridor Final

Environmental Impact Statement ["ROD"] (Dec. 23, 2013).

81.     In her decision, Secretary Jewell concluded that the impacts of a road through

Izembek would significantly and adversely affect the Refuge and "would not be offset" by

adding the exchange lands to Izembek. ROD at 2–4.

82.     Secretary Jewell explained that not moving forward with the land exchange

"protects the unique resources the Department administers for the entire Nation." ROD at 20. By

rejecting the land exchange, Secretary Jewell protected Izembek's "unique and internationally

recognized habitats," maintained the integrity of designated Wilderness, and ensured that the

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 18 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 18 of 27

Refuge would continue to meet the purposes that it was originally established for in 1960 and re-designated to achieve in ANILCA. ROD at 4, 7.

83.     Secretary Jewell determined that not allowing the exchange would comply with the obligations under the National Wildlife Refuge Administration Act. ROD at 7.

84.     Secretary Jewell found that a land exchange would "diminish the ability of the Service to meet the objectives of the Wilderness Act" because the impacts to the remaining Wilderness in Izembek would be "irreparabl[e] and significant[]." ROD at 9.

85.     Secretary Jewell specifically found that not proceeding with the exchange "best satisfies Refuge purposes, and best accomplishes the mission of the Service and the goals of Congress in ANILCA." ROD at 20.

86.     The King Cove Corporation, along with the Agdaagux Tribe of King Cove, the Native Village of Belkofski, the Aleutians East Borough, the City of King Cove, and two individuals, challenged Secretary Jewell's decision in federal court. The State of Alaska joined that litigation as an intervenor-plaintiff. Friends of Alaska National Wildlife Refuges, Defenders of Wildlife, Wilderness Watch, Center for Biological Diversity, The Wilderness Society, National Audubon Society, the National Wildlife Refuge Association, and the Sierra Club joined as intervenor-defendants. The district court of Alaska upheld Secretary Jewell's decision to not move forward with a land exchange and road construction. The plaintiffs and the State of Alaska appealed that decision to the Ninth Circuit, but later voluntarily dismissed the case.

87.     In May 2017, KCC wrote to Secretary Zinke asking him to exchange land under ANCSA and ANILCA "that would allow King Cove to complete a road connection between King Cove and Cold Bay, Alaska." KCC "request[ed] that DOI enter into a process to consider a

First Amended Compl. for Declaratory and Injunctive Relief                                        Page 19 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 19 of 27

land exchange between the King Cove Corporation and the U.S. Government and Department of the Interior in accordance with AN[CS]A, ANILCA, and other pertinent laws."

88.    Secretary Zinke "mandated that the Fish and Wildlife Service explore the option of a land trade between the Izembek Refuge and the King Cove Native Corporation." Minimum Requirements Decision Guide Workbook, Project Title: Proposed King Cove-Cold Bay Road Corridor Engineering Reconnaissance, signed by Gregory S. Risdahl (June 23, 2017).

89.    As a result, FWS issued a permit to the Alaska Department of Transportation and Public Facilities to conduct a ground-based reconnaissance of two proposed road alignments between King Cove and Cold Bay. This survey was to collect data "to determine the feasibility of road alignments, potential material sources, localized topography, and geologic and environmental conditions in order to analyze the best possible location for the road. *Id.*

90.    Secretary Zinke signed an "Agreement for the Exchange of Lands" with KCC on January 22, 2018. U.S. Dep't of the Interior, Fish and Wildlife Service, Agreement for the Exchange of Lands (Jan. 22, 2018) ("Exchange Agreement").

91.    The Exchange Agreement states that "[t]he authority for the exchange is section 1302(h) of [ANILCA]."

92.    The Exchange Agreement is a binding agreement "to the exchange of real property interests."

93.    The Exchange Agreement states that "the United States will convey to KCC the surface and subsurface estate of up to 500 acres from within [the Refuge] that are identified by KCC as being needed for the construction, operation, and maintenance of a road linking King Cove with the Cold Bay airport (the U.S. Exchange Lands)."

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 20 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 20 of 27

94.     In return, KCC will "convey to the United States the surface estate of certain lands it owns in Izembek [National Wildlife Refuge] and Alaska Peninsula National Wildlife Refuge (the KCC Exchange Lands)." These lands will be selected from all of the lands KCC owns within Izembek and the Alaska Peninsula National Wildlife Refuge (the KCC Exchange Lands Pool). Under the Exchange Agreement, KCC will identify which exact lands it will convey to the United States from the KCC Exchange Lands Pool.

95.     KCC will also relinquish its selection rights under ANCSA to 5,430 acres located within Izembek. KCC will be entitled to the conveyance of 5,430 acres previously selected, but not yet conveyed under ANCSA, outside of Izembek. None of the lands KCC selected under ANCSA are in the pool of U.S. Exchange Lands.

96.     The Exchange Agreement sets forth a process for KCC to select the exact lands that will comprise the U.S. Exchange Lands and the KCC Exchange Lands, and mandates that the lands will be of equal value.

97.     Under the Exchange Agreement, no additional decisions remain to be made by Secretary Zinke, the Department of Interior, or FWS. The only additional actions that the Department of the Interior will take under the Exchange Agreement is to appraise both the U.S. Exchange Lands and the KCC Exchange Lands Pool and notify KCC of the exact number of acres of land from the KCC Exchange Lands Pool that will equal the value of the U.S. Exchange Lands.

98.     The Exchange Agreement is a final agreement that binds Secretary Zinke, the Department of Interior, and FWS to exchange lands with KCC.

99.     The Exchange Agreement imposes road construction standards and some use prohibitions. These standards and prohibitions must be included in any patent issued by the

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 21 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 21 of 27

Secretary to ensure that the Izembek lands remain subject to the laws and regulations governing use and development in the Izembek Refuge. 43 U.S.C. § 1621(g).

100.    The Exchange Agreement states that the conveyance of the U.S. Exchange Lands will be by patent issued by the Bureau of Land Management, "preceded by Interim Conveyance if necessary."

101.    Based on information and belief, the lands received by KCC will be transferred to the State of Alaska, and the State of Alaska will be responsible for permitting and constructing the road.

102.    News reports on the Exchange Agreement stated that: "After the exchange is done, the land would be turned over by King Cove Corp. to the state of Alaska" and noted that the State of Alaska is responsible for constructing the road. Nathaniel Herz, *King Cove and Feds Sign Deal to Advance Proposed Road Through Wildlife Refuge*, Alaska Dispatch News (Jan. 22, 2018), https://www.adn.com/politics/2018/01/22/king-cove-and-feds-sign-deal-to-advance-proposed-road-through-wildlife-refuge/ .

103.    State of Alaska Governor Bill Walker issued a press release noting that the "land conveyance will enable construction of the road to finally move forward" and that the State has ensured that "$7.5 million remained in the capital budget last year to jump start construction of the road." Press Release No. 19-007, Office of the Governor, Governor Applauds Unified Effort to Achieve Long-Sought King Cove Road (Jan. 22, 2018), https://gov.alaska.gov/newsroom/ 2018/01/governor-applauds-unified-effort-to-achieve-long-sought-king-cove-road/ .

104.    Based on information and belief, the Secretary did not prepare any biological assessments for review by FWS or NMFS on the potential impacts of the land exchange to listed species and critical habitat under Section 7 of the ESA.

First Amended Compl. for Declaratory and Injunctive Relief                                    Page 22 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 22 of 27

## FIRST CLAIM FOR RELIEF
(Violation of Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3192)

105. Friends re-alleges paragraphs 1–104.

106. ANICLA mandates that acquiring lands be for the purposes of the Act. 16 U.S.C. § 3192(h).

107. The exchange does not further the purposes of ANILCA.

108. Secretary Zinke's decision to exchange Izembek lands for KCC lands does not further the purposes of ANILCA and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706.

## SECOND CLAIM FOR RELIEF
(Violation of Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3161–3173)

109. Friends re-alleges paragraphs 1–108.

110. Title XI of ANICLA requires that transportation systems through conservation system units in Alaska be approved or disapproved through its "single comprehensive statutory authority" and mandates that any action "by any Federal agency under applicable law with respect to the approval or disapproval of the authorization, in whole or in part, of any transportation or utility system shall not have any force or effect unless the provisions of this section are complied with." 16 U.S.C. §§ 3161(c), 3164.

111. Title XI of ANILCA prohibits the construction of transportation systems through designated Wilderness without recommendation by the President and approval by Congress. 16 U.S.C. § 3166.

112. The Exchange Agreement specifically states that it is for the purpose of allowing the construction of a road.

113. The Exchange Agreement was not adopted pursuant to Title XI's procedures.

---

First Amended Compl. for Declaratory and Injunctive Relief                    Page 23 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 23 of 27

114. The President has not recommended to Congress that a road be constructed through Izembek pursuant to Title XI's procedures.

115. Congress has not approved a road through Izembek.

116. Secretary Zinke's decision to exchange Izembek lands for KCC lands for the purpose of allowing the construction of a road through the Refuge without complying with Title XI of ANICLA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706.

### THIRD CLAIM FOR RELIEF
(Violation of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370h)

117. Friends re-alleges paragraphs 1–116.

118. NEPA requires the preparation of an EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4.

119. The Exchange Agreement for the purpose of allowing the construction of a road through Izembek is a major federal action significantly affecting the quality of the human environment.

120. ANILCA § 910, 43 U.S.C. § 1638, does not apply to the Land Exchange Agreement and does not exempt the Secretary from compliance with NEPA.

121. Secretary Zinke's decision to exchange Izembek lands for KCC lands for the purpose of allowing the construction of a road through the Refuge without complying with NEPA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706.

First Amended Compl. for Declaratory and Injunctive Relief                                      Page 24 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 24 of 27

## FOURTH CLAIM FOR RELIEF

### (Violation of the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–1544)

122.     Friends re-alleges paragraphs 1–121.

123.     Section 7(c) of the ESA requires federal agencies to conduct a biological assessment of any endangered or threatened species likely to be affected by an agency action if such species may be present in the area of the proposed action. 16 U.S.C. § 1536(c).

124.     Species listed as either threatened or endangered pursuant to the ESA and designated critical habitat are present in the Izembek National Wildlife Refuge.

125.     Secretary Zinke did not prepare the biological assessments required for each listed species and designated critical habitat in the area.

126.     Secretary Zinke acted arbitrarily, capriciously, in abuse of discretion and violated the ESA by failing to prepare biological assessments for the Steller's eider and southwest Alaska distinct population segment of the northern sea otter, and associated critical habitat for each species. 16 U.S.C. § 1536(a)(2); 50 CFR § 402.12.


## REQUEST FOR RELIEF

The Plaintiffs request that the Court grant the following relief:

A.     Declare that Secretary Zinke's decision to exchange Izembek lands for KCC lands is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of ANILCA, NEPA, and the ESA;

B.     Vacate and set aside Secretary Zinke's decision authorizing the exchange;

C.     Invalidate the Exchange Agreement;

D.     Enter appropriate injunctive relief;

E.     Award Friends all reasonable costs and fees as authorized by law; and

F.     Award Friends such other and further relief as this Court deems just and proper.

First Amended Compl. for Declaratory and Injunctive Relief                    Page 25 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 25 of 27

Respectfully submitted this 19th day of April, 2018,

_s/ K. Strong_____
Katherine Strong (AK Bar No. 1105033)
Brook Brisson (AK Bar No. 0905013)
Valerie Brown (AK Bar No. 9712099)
TRUSTEES FOR ALASKA

*Attorneys for Plaintiffs*

First Amended Compl. for Declaratory and Injunctive Relief                    Page 26 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG   Document 32   Filed 04/19/18   Page 26 of 27

## CERTIFICATE OF SERVICE

I certify that on April 19, 2018, I caused a copy of PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case whom are registered with the CM/ECF system.

     s/ K. Strong
Katherine Strong (AK Bar No. 1105033)

First Amended Compl. for Declaratory and Injunctive Relief      Page 27 of 27
*Friends of Alaska National Wildlife Refuges, et al., v. Zinke, et al.*, Case No. 3:18-cv-00029-TMB

Case 3:18-cv-00029-SLG    Document 32    Filed 04/19/18    Page 27 of 27