JAHNA LINDEMUTH
ATTORNEY GENERAL
Thomas E. Lenhart
Senior Assistant Attorney General
Alaska Bar No. 0703006
Alaska Department of Law
P.O. Box 110300
Juneau, Alaska 99811-0300
907.465.3600 (office)
907.465.2417(fax)
tom.lenhart@alaska.gov
*Attorneys for State of Alaska*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, *et al.* <br><br> Defendants, <br><br> and <br><br> KING COVE CORPORATION, *et al.* <br><br> Defendant-Intervenors. | Case no. 3:18-cv-00029-TMB <br><br><br> PROPOSED STATE OF ALASKA AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

I. INTRODUCTION AND INTERESTS OF AMICUS CURIAE ............................ 1
II. ARGUMENT ................................................................................................. 5
    A. Plaintiffs have not alleged standing to contest the land exchange ...................... 5
    B. Plaintiffs' case is not ripe for consideration ....................................................... 6
    C. ANILCA Title XI procedures are not required for a land exchange ................. 6
    D. The land exchange furthers the purposes of ANILCA ...................................... 7
    E. Secretary correctly determined that section 910 of ANILCA applied to the land exchange ........................................................................................................... 10
    F. The Secretary did not violate the consultation requirements of the Endangered Species Act .................................................................................................... 12
III. CONCLUSION ............................................................................................. 12
    CERTIFICATE OF SERVICE ............................................................................. 13

**CASES**

*City of Angoon v. Marsh,* 749 F.2d 1413, 1415-16 (9th Cir. 1984) ...................... 4, 8

**ALASKA STATUTES**

Alaska Const. art. 7, §§4 and 5 .................................................................................. 2
AS 44.42.020 ..................................................................................................... 2, 3, 11

**U.S.C.**

16 U.S.C. § 1536 ....................................................................................................... 12
16 U.S.C. § 1613 ....................................................................................................... 10
16 U.S.C. § 3111-3126 ............................................................................................... 9
16 U.S.C. § 3161(c) .................................................................................................... 6
16 U.S.C. § 3162 ......................................................................................................... 7
16 U.S.C. § 3170 ..................................................................................................... 7, 9
16 U.S.C. § 3192 ....................................................................................................... 10
43 U.S.C. § 1638 ....................................................................................................... 10

## I. INTRODUCTION AND INTERESTS OF AMICUS CURIAE

Secretary Zinke of the Department of Interior ("Secretary") has executed a land exchange ("Agreement") with the King Cove Corporation ("KCC"). As more fully explained in the briefs of the Secretary and KCC, together with its aligned intervenors ("King Cove-Cold Bay Group"), the Agreement itself does not and cannot authorize a road, not even an emergency evacuation road to save lives. Authorization for any road would almost certainly require permit approval from other agencies such as the United States Army Corps of Engineers. The Agreement is effectively only a real estate transaction that exchanges ownership of relatively small parcels of land. This real estate transaction is an action well within the authority of the Secretary pursuant to ANILCA, ANCSA, and other statutes.

Reviewing this exchange in the proper perspective of a real estate transaction, it is a trade of less than 500 acres of federal lands for an equal value amount of KCC lands. These KCC lands are not the low-value lands that Plaintiff would ask the Court to believe, but are lands that the Secretary has long ago identified as priority lands for acquisition whenever possible. Secretary's Br. at 15. Some of the land likely to be transferred to federal ownership includes the shoreline of Kinzaroff Lagoon, an acquisition that will improve public access.

Plaintiffs have not analyzed this exchange as a real estate transaction but instead have based their entire case on the alleged harms of constructing a road through the Izembek Wildlife Refuge and Wilderness. Plaintiffs have even failed to establish standing by failing to claim any potential harm other than from road construction, which is not

1

authorized by the Agreement. Therefore, every claim and every argument put forth by Plaintiffs is premature, not ripe, and speculative. Only if and when the new owner of any land exchanged under the Agreement seeks authorization to actually build a road through a conservation system unit would the claims brought by Plaintiffs in this case be potentially reviewable by this Court. But as for the current case, this Court must rule against Plaintiffs for the reasons set forth by the Secretary and King Cove-Cold Bay Group.

The State of Alaska ("Alaska") has a universal interest in the health, welfare and safety of its residents. Alaska Const. art. 7, §§4 and 5. In addition to these broad interests, Alaska has a very specific interest in ensuring that its residents have access over the vast expanse of federal lands that often leave communities like King Cove isolated where they are effectively surrounded by federally-owned conservation units. As a result, Alaska has long supported the efforts of King Cove-Cold Bay Group to obtain access over the Izembek Refuge to reach Cold Bay and the all-weather airport located there. This airport offers life-saving emergency air evacuation for critical illness or injury, if the residents can get there. Alaska's support has included joining with King Cove-Cold Bay Group in litigation where appropriate.

The Alaska Department of Transportation and Public Facilities (DOT&PF) is authorized under state law to plan, design, and construct transportation infrastructure connecting communities within the state. AS 44.42.020(a)(1). In furtherance of the development of transportation infrastructure, the DOT&PF may coordinate efforts with local governments and private organizations to develop transportation facilities that will

be owned, operated, and maintained by a municipal government. AS 44.42.020(a)(7). It is under these statutory authorities that the state assists the King Cove-Cold Bay Group with the engineered design, environmental permitting and construction of this necessary transportation infrastructure. Contrary to the unfounded statements in the Plaintiffs' Motion for Summary Judgment (Docket 51, p. 31 at n. 158 and p. 44 at n. 232), the State of Alaska will have no post-construction involvement or responsibilities in the operations of any future road connecting Cold Bay and King Cove.

Upon the execution and implementation of the Agreement, the residents of King Cove will still be unable to breathe a collective sigh of relief. Mere ownership of a narrow strip of land between King Cove and the Cold Bay Airport does not guarantee the construction of a road, the sharing of the communities' resources, or any other activity that one could speculate might someday happen. If KCC can ultimately obtain financing and decides to seek authorization to construct a road, there will be significant public process to be completed with multiple agencies to obtain such approval. The Agreement cannot and does not accomplish more than exchange ownership of some relatively small parcels.

Plaintiffs claim the Agreement is not consistent with the purpose of ANILCA. But in addition to obtaining ecologically important lands that benefit the Refuge, the Secretary's decision to exchange lands also satisfies other purposes of ANILCA such as providing access (even if not presently road access) across federal lands to effectively surrounded inholder residents of King Cove. The exchange also improves the safety and

socioeconomic well-being of the residents of King Cove, satisfying another purpose of ANILCA.

Plaintiffs either misconstrue or mischaracterize two major elements in this case that create fatal flaws in each of Plaintiffs' arguments. First, ANILCA does not have a single purpose of ecological protection but rather is a dual purpose statute that ensures "an adequate opportunity for satisfaction of the economic and social needs of the people of Alaska." *City of Angoon v. Marsh*, 749 F.2d 1413, 1415-16 (9th Cir. 1984).

The second fatal flaw running through Plaintiffs' brief is the conflating of the real estate trade under the Agreement and authorization to construct a road. All harms alleged, and every argument made by Plaintiffs is directed at the construction of a road. But the mere change of ownership of some parcels of land has no effect on the environment or the ecology of the area. Any projects or activities that KCC may propose as the new owner of a parcel will be subject to a public review and approval process that will include opportunities for Plaintiffs to participate and appeal if not satisfied with the outcome. Plaintiffs' case is based on nothing but speculation that King Cove-Cold Bay Group will have adequate financing to someday seek authorization to construct a road over the land corridor.

The best example of Plaintiffs' speculation and conflating of events is the allegation that KCC and the Secretary followed the wrong process to authorize a road. Given that no entity has sought road construction authorization, it is obviously impossible for this Court to review an application that has not been filed or to review a federal decision process that has not yet commenced and may never happen. To state the

4

Case 3:18-cv-00029-TMB   Document 68-1   Filed 08/24/18   Page 5 of 15
Exhibit Page 6 of 15

obvious, this Court cannot determine whether the proper procedure was followed for an event that has not occurred.

Therefore, the question of the proper procedure to authorize a road − or impacts from a road − are not properly before this Court because nobody has applied for road authorization. If some day in the future KCC, or someone else, actually seeks road authorization, the appropriate agencies will act on that application, reach a decision, and then Plaintiffs may appeal to this Court. But for today, this Court must rule against the Plaintiffs. Alaska fully supports the arguments of the Secretary and King Cove-Cold Bay Group.

## II. ARGUMENT

The Agreement does not authorize construction of a road and Plaintiffs cannot possibly suffer the harms they allege by mere change in ownership under the land exchange. The Plaintiffs' Motion for Summary Judgment must therefore be denied. Alaska fully endorses the briefs of the Secretary and King Cove-Cold Bay Group in their entirety.

### A. Plaintiffs have not alleged standing to contest the land exchange.

King Cove-Cold Bay Group has presented the Court with a complete briefing on the failure of Plaintiffs to establish standing to challenge the mere change of land ownership under the Agreement. King Cove-Cold Bay Group Br. 10-14. The Plaintiffs have failed to allege any harm that would arise from a mere change of land ownership

under the Agreement. The case should therefore be dismissed for lack of Plaintiffs' standing.

B. **Plaintiffs' case is not ripe for consideration.**

At every turn, Plaintiffs have completely conflated the land exchange with authorization and construction of a road. Alaska joins the Secretary and King Cove-Cold Bay Group in urging this Court to reject Plaintiffs' invitation to attempt judicial review of the authorization of road construction when the Agreement includes no such authorization and there has been no application for such authorization made to any agency.

C. **ANILCA Title XI procedures are not required for a land exchange.**

Plaintiffs argue that the State, the Secretary, and KCC must "follow the procedures of Title XI of ANILCA . . . to build a road through a conservation system unit." Plaintiffs Br. at 17-23. The Secretary and King Cove-Cold Bay Group provide comprehensive explanations as to why the Agreement does not authorize construction of any road, and there has been no decision to build a road through a conservation system. Secretary's Br. 19-21; King Cove-Cold Bay Br. 16-17.

But even if the question of proper procedure for road authorization were currently reviewable, Alaska disagrees with Plaintiffs' position that the only possible process for ever authorizing a road on this exchange corridor is under the Transportation and Utility System authorization provisions of Title XI.

Plaintiffs state that 16 U.S.C. § 3161(c) provides that all "transportation and utility systems" are subject to a single set of procedural requirements. Plaintiffs' Br. at 20.

6

Alaska and its Department of Transportation & Public Facilities have a great deal of experience with environmental permitting and authorizations, engineered designs to achieve fully compliant facilities, and road construction. Based on this expertise and experience, it is unquestionable that not every road through a conservation system unit is a transportation and utility system subject to the provisions cited by Plaintiffs. "Transportation and Utility System" is a defined term and many limited purpose roads, such as a road for inholder access, are not included in that definition. 16 U.S.C. § 3162. Roads that do not fall under ANILCA's definition of a transportation and utility system may be authorized to cross conservation system units under different provisions of ANILCA.

For example, ANILCA's section 1110(b) provides that the Secretary "*shall* provide adequate and feasible access for economic and other purposes" when special access to inholdings is required. 16 U.S.C. § 3170(b) (emphasis added). Given that not all road authorizations are subject to the same provisions, Plaintiffs argument to the contrary is flawed. However, given the lack of any current road authorization or application, this Court has nothing to review at this time.

### D. The land exchange furthers the purposes of ANILCA.

Plaintiffs argue that this Section 1302(h) Land Exchange does not further the purposes of ANILCA because:

> The reason for the exchange is to allow a road in an area that Congress established as a National Wildlife Refuge to protect wildlife and habitat, and as a Wilderness, where road construction is prohibited. Plaintiffs' Br. at 23.

Alaska fully supports the opposition arguments made by the Secretary and King Cove- Cold Bay Group.

Once again, Plaintiffs mischaracterize the Agreement as authorizing a road which clouds their argument. But here, Plaintiffs also mischaracterize the many purposes of ANILCA. Without doubt, ecological protection is one purpose of ANILCA. However, as set forth in detail in the briefs of the Secretary as well as King Cove-Cold Bay Group, there are many provisions in ANILCA that serve purposes other than ecological protection. A large number of these other purposes could be characterized as "people purposes" as Congress was very concerned with preserving certain rights and protections of the residents of Alaska as truly vast tracts of their state were set aside for other purposes including ecological preservation.

As noted above, the Ninth Circuit has held that ANILCA is a dual purpose statute that balances the socioeconomic needs of Alaskans with the need to protect the natural wonders of the state. In particular, the court held that a purpose of ANILCA is to provide "adequate opportunity for satisfaction of the economic and social needs of the people of Alaska." *City of Angoon* at 1415-16.

An agreement that does not authorize but makes it possible to someday seek authorization for a life-saving emergency evacuation road must surely fit within the scope of addressing the social needs of the residents of Alaska in the King Cove-Cold Bay Group, and thus meets the purpose of ANILCA.

Other examples of specific "people provisions" in ANILCA include the right to access land to hunt and fish for subsistence purposes and the right for access across

federal conservation units for those effectively surrounded by such units.[1]

---

[1] 16 U.S.C. § 3111-3126; 16 U.S.C. § 3170. There are many other sections of ANILCA that provide specific rights for people, which include:

- Section 204 — recognizing specific Native selections within Wrangell-St. Elias National Park.
- Section 205 — allowing commercial fishing within certain national parks.
- Section 201(4)(b) — authorizing a road for mineral access across Gates of the Arctic National Park.
- Section 201(7)(b) — protection of Nondalton Native Corporation ownership in Lake Clark National Park.
- Section 203(c) — protection of mining claims within Mt. McKinley National Park.
- Section 304(d) — allowing commercial fishing within refuges.
- Section 304(f) — authorizing cooperative management of refuges with Native corporations, the state, and other landowners within the refuges.
- Section 402-404 — special provisions to protect miners and mining claims in national conservation and recreation areas created in Title IV of ANILCA.
- Section 502 — special provision to protect miners and mining claims in national forests
- Section 503(f) — special provision to protect miners and mining claims in forest monuments.
- Section 503(j) — provision to protect Thayer Lake Lodge in Admiralty Monument.
- Section 504 — special provision to protect mining claims in Admiralty and Misty Fjords National Monuments.
- Section 505 — provision to protect commercial fishermen in national forests in Alaska.
- Section 907 — special provisions to protect Native lands in Alaska Land Bank.
- Section 1303 — protection of cabins and other private property in conservation system units.
- Section 1308 — local hire provisions for rural residents near conservation system units.
- Section 1314 — protection of state fish and game management authority.

But even without considering the critical ANILCA "people purposes" served by the Agreement, the lands to be exchanged are equal value lands and are considered of significant ecological value by the Secretary. Secretary's Br, 14-15. Determining the relative ecological value of parcels to be exchanged is a task within the expertise of the agency and the decision of the agency should be given considerable deference. In this case, the agency has determined that the land exchange meets both the ecological protection and the "people purposes" of ANILCA. *Id.*

Plaintiffs' arguments on failure to meet the purpose of ANILCA are misleading as Plaintiffs misconstrue the Agreement as authorizing a road and misconstrue ANILCA to have a single purpose of ecological protection. There is no authorization for a road in the Agreement and ANILCA is a dual purpose statute that includes meeting the social and economic needs of Alaskans. Therefore, this Court should rule against Plaintiffs on their ANILCA purpose argument.

### E. Secretary correctly determined that section 910 of ANILCA applied to the land exchange.

The Agreement states:

> The Parties agree that the exchange is made pursuant to the Secretary of the Interior's authority under section 1302(h) of ANILCA, as amended, 16 U.S.C. § 3192(h), that pursuant to 16 U.S.C. § 1613(a) this exchange of land is a conveyance under ANCSA and therefore subject to section 910 of ANILCA, 43 U.S.C. § 1638.

Section 910 provides that a NEPA environmental impact analysis is not required in this exchange with a Native corporation. Plaintiffs disagree with the Secretary's interpretation of this ANILCA provision. Plaintiffs' Br. at 37. Alaska, having decades of

experience with ANILCA and ANCSA, fully supports the arguments of the Secretary and King Cove-Cold Bay Group in favor of the Secretary's rationale that the Section 910 exclusion from NEPA is applicable to this land exchange.

Although not directly presented as a claim or argument by Plaintiffs in the Motion for Summary Judgment, the Plaintiffs' complaint at least suggested that Section 910 might not be applicable because the State of Alaska might be a real party of interest in the land exchange or in the ownership, operation, or maintenance of the road. Alaska was a party to the proposed land exchange authorized by the United State Congress in 2009 but ultimately not approved by Secretary Jewell. However, Alaska is not a signatory to the Agreement nor does Alaska have any intent of receiving or acquiring any form of ownership interest in the land acquired by KCC pursuant to the Agreement.

Furthermore, if a road is ultimately authorized and constructed over this corridor described in the Agreement, Alaska does not intend to own, operate, or maintain such a road. *See supra* at 2-3. Alaska does anticipate a role in contributing its engineering and other professional expertise to the design, permitting, planning and construction if a road is someday authorized. The Alaska Department of Transportation & Public Facilities (DOT&PF) is authorized under state law to cooperate with local governments and private entities to develop transportation infrastructure that is owned, operated, and maintained by a municipal government. AS 44.42.020(a)(7). Countless city-owned and borough-owned roads throughout the state were developed with the assistance of DOT&PF. If the dreamed of road between Cold Bay and King Cove is ever to come into existence, it will be operated and maintained by the Defendant-Intervenor Aleutians East Borough.

### F. The Secretary did not violate the consultation requirements of the Endangered Species Act.

The Agreement does not violate the Section 7 consultation or any other provision of the Endangered Species Act (hereinafter "ESA"). 16 U.S.C. § 1536(a)(2). The simple change in land ownership as the result of the exchange does not have impact on the ecology on the ground and does not trigger consultation under ESA. Alaska agrees with the Secretary and King Cove-Cold Bay Group that there is no ESA violation.

## III. CONCLUSION

The Secretary and King Cove-Cold Bay Group have presented thorough and compelling arguments showing that Plaintiffs have failed to establish standing to challenge and that the Plaintiffs' claims are not ripe as they are all based on a nonexistent road authorization. Even if the claims are ripe, none have merit. Alaska joins with the Secretary and King Cove-Cold Bay Group in urging this court to grant summary judgment to the Secretary.

Dated August 24, 2018

JAHNA LINDEMUTH
ATTORNEY GENERAL
Thomas E. Lenhart
Senior Assistant Attorney General
Alaska Bar No. 0703006
Alaska Department of Law
P.O. Box 110300
Juneau, Alaska 99811-0300
907.465.3600 (office)
907.465.2417(fax)
tom.lenhart@alaska.gov
*Attorneys for State of Alaska*

# CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018 I served a copy of **PROPOSED STATE OF ALASKA AMICUS BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** by electronically filing it with the Clerk of the U.S. District Court for Alaska which will cause electronic copies of such filing to all attorneys of record in this case, all of whom are registered with the Court's CM/ECF system

*s/Thomas E. Lenhart*
Thomas E. Lenhart
Senior Assistant Attorney General
Alaska Bar No. 0703006
Alaska Department of Law
P.O. Box 110300
Juneau, Alaska 99811-0300
907.465.3600 (office)
907.465.2417(fax)
tom.lenhart@alaska.gov
*Attorney for State of Alaska*
